# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Victor Ali Barakat,

             Plaintiff,

v.

Scott P. Fisher,

             Defendant.

Court File No.: 13-CV-1296 (JNE/SER)

**REPORT AND RECOMMENDATION**

Victor Ali Barakat, *Pro se*, 20920-424, FCI Sandstone, P.O. Box 1000, Sandstone, Minnesota, 55072.

Gregory G. Brooker, Esq., United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Defendant.

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Victor Ali Barakat's ("Barakat") Petition for a Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. [Doc. No. 1]. This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and (C) and District of Minnesota Local Rule 72.1. In addition, Barakat's Motion for Preliminary Injunction and to Expedite Hearing, ("Mot. for Preliminary Injunction and Expedition") [Doc. No. 3]; Motion to Seal Pleadings and Other Documents, ("Mot. to Seal") [Doc. No. 5]; Motion for Express Findings of Fact and Conclusions of Law, ("Mot. for Express Findings") [Doc. No. 8] have been referred to the undersigned. (Order of Reference Dated July 22, 2013) [Doc. No. 19]. The undersigned will also review Barakat's Motion to Promptly Conduct Proceedings, ("Mot. to Promptly Conduct") [Doc. No. 22] and Motion for Information and Request of Recommendation of Magistrate Judge, ("Mot. for

Information") [Doc. No. 25]. For the reasons stated below, the Court recommends dismissing the Petition and denying the Motions.

## I. BACKGROUND

Barakat is currently an inmate at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"), where he is serving a 162-month sentence, which will be followed by five years of supervised release. (Decl. of Julie Groteboer, "Groteboer Decl.") [Doc. No. 10 at ¶¶ 3–4]. Judge Leinenweber of the Northern District of Illinois sentenced Barakat after he was convicted of "Bank Robbery by Force or Violence, in violation of 18 U.S.C. § 2113(a) and (d), and Carrying a Firearm During the Commission of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)." (*Id.*). Barakat's projected release date, taking into account good conduct time ("GCT"), is June 12, 2014. (*Id.* ¶ 5). Under the Second Chance Act (the "SCA"), Barakat will be designated to a Residential Reentry Center ("RRC"), in Chicago, Illinois, on approximately December 17, 2013.[1] (Supervision Release Plan, "Release Plan," Attach. H, Attached to Groteboer Decl.) [Doc. No. 10 at 46–48].

On December 27, 2012, Barakat's case manager and unit manager (collectively, "the Unit Team") at FCI Sandstone reviewed Barakat's pre-release placement under the SCA. (Groteboer Decl. ¶ 6). In making its RRC placement determination, the Unit Team reviewed: the resources available at the RRC facilities, the nature of Barakat's charges, Barakat's good behavior, his completion of three vocational programs and enrollment in an additional program, his family's support (including financial support), his job skills, and his six-month deposit history which included $1,500 from outside sources. (*Id.* ¶¶ 7–9). After the review, the Unit Team

---

[1] An RRC is similar to a halfway house.

recommended a 180-day RRC placement for Barakat. (*Id.* ¶ 10).[2] On January 4, 2013, Barakat was informed of the Unit Team's decision. (*Id.*).

On January 7, 2013, Barakat sent an e-mail to Warden Scott P. Fisher ("Fisher") stating his disagreement with the Unit Team's RRC recommendation and that his attempt to resolve the matter informally with staff had failed. (*Id.* ¶¶ 11–12). Barakat sought a twelve-month RRC placement. (*Id.*). Then, on January 18, 2013, Warden Fisher responded to Barakat's e-mail by outlining the individualized review for RRC placement Barakat had received under the SCA by the Unit Team and denying ultimately Barakat's request for a longer, twelve-month, RRC placement. (*Id.* ¶ 12). On February 28, 2013, Barakat submitted to Warden Fisher a Request for Administrative Remedy ("BP-9"), in which Barakat again requested a twelve-month RRC placement. (*Id.* ¶ 13). Warden Fisher denied Barakat's request, reiterating his earlier e-mail response. (*Id.*); (Request for Administrative Remedy and Response "Request for Administrative Remedy," Attach. F, Attached to Groteboer Decl.) [Doc. No. 10-1 at 27–36].

Barakat filed a Regional Administrative Remedy Appeal requesting a twelve-month RRC placement. (Groteboer Decl. ¶ 14). This request was denied after it was determined that the Unit Team properly conducted a review under the SCA and the Region found the 180-day placement recommended by the Unit Team sufficient. (*Id.*); (Request for Administrative Remedy).

On April 19, 2013, Barakat filed a Central Office Administrative Remedy Appeal where he again requested a twelve-month RRC placement. (Groteboer Decl. ¶ 15). Barakat was to receive a response on April 22, 2013, but an extension was granted to June 18, 2013. (*Id.*). Barakat did not receive a response on June 18, 2013, which operates effectively as a denial of his request. (*Id.* ¶ 17) (citing 28 C.F.R. § 542.18).

---

[2]     The parties also refer to this as a six-month RRC designation.

A Supervision Release Plan was prepared on May 10, 2013, where the Unit Team again recommended an approximately 180-day RRC placement.[3] (*Id.* ¶ 16); (Supervision Release Plan/Institutional Referral "Supervision Release Plan", Attach. H, Attached to Groteboer Decl.) [Doc. No. 10-1]). The Supervision Release plan was reviewed by the Warden and submitted to the Community Corrections Manager who made the ultimate RRC placement decision. (Groteboer Decl. ¶ 16).

Barakat filed his Petition on May 30, 2013, pursuant to 28 U.S.C. § 2241. (Pet. at 1–3). Essentially, Barakat challenges the Bureau of Prisons's ("BOP") determination that a 180-day RRC placement would be sufficient to provide the greatest likelihood of Barakat's successful reintegration into the community, and instead asserts a twelve-month RRC placement would be more consistent with the SCA. *See generally* (*id.*). Barakat also asserts that the RRC placement decision gives rise to claims under the Administrative Procedure Act (the "APA") and substantive due process. *See* (*id.*). In his Petition, Barakat requests that the Court order the BOP to transfer him to an RRC no later than June 13, 2013, or as soon as possible.[4] (Pet. at 20). In addition, Barakat seeks an order directing FCI Sandstone to "alter its practice concerning Second Chance request[s] in similar situations (inmates approaching the last ten per centum of the term to be served)[.]" (*Id.* at 15).[5]

---

[3] The Groteboer Declaration notes that on May 10, 2013, Barakat was recommended for a 210-day RRC placement. (Groteboer Decl. ¶ 16). The 210-day figure was a mistake and was corrected in an amended declaration to reflect the 180-day RRC placement recommendation Barakat received. (Am. Decl. of Julie Grotenboer) [Doc. No. 16].

[4] Barakat, elsewhere, requests the "Court order him released outright, and that all remaining portions of his sentence be terminated, including his supervised release, as a matter of equity." (Amended Reply to Fisher's Response, "Barakat's Am. Reply") [Doc. No. 21 at 12].

[5] After filing his Petition, Barakat filed multiple other motions. First, Barakat filed a Motion for Preliminary Injunction and Expedition in which Barakat seeks immediate transfer to an RRC to prevent irreparable harm. (Mot. for Preliminary Injunction and Expedition at 3). Second, Barakat filed his Motion to Seal where he seeks an order to keep the documents in the

## II.    DISCUSSION

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a). But writs of habeas corpus "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).

### A.    Barakat Has Exhausted his Administrative Remedies

"A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP." *Mathena v. United States,* 577 F.3d 943, 946 (8th Cir. 2009) (citations omitted).   The administrative remedy procedure at the BOP is a three-tiered process.  *See* 28 C.F.R. § 542.13–542.15.  The first stage is an informal resolution where the prisoner presents his or her claims to the staff, and if unsuccessful, then files a formal grievance with the Warden.  28 C.F.R. § 542.13–14.  An inmate that is still dissatisfied may submit an appeal to the Regional Director.  28 C.F.R. § 542.15.  Finally,  if the inmate is still dissatisfied, the inmate can appeal to the General Counsel.  28 C.F.R. § 542.15.  An inmate's administrative remedies have been exhausted when the inmate either: (1) receives a response from the Central Office or (2) the Central Office exceeds its time to reply, including any extensions for reply that have been granted.  28 C.F.R. § 542.15; § 542.18.

Barakat asks the Court to waive the exhaustion requirement.  (Pet. at 10).  Barakat's request, however, is moot because the final response from the Central Office was due on June 18, 2013, and it was not received, thus, the absence of a response is deemed a denial.  28 C.F.R.

---

matter sealed until final adjudication because of his concerns that other inmates were able to access his legal mail.  (Mot. to Seal at 1–3).  Third, Barakat filed his Motion for Express Findings where he asked the Court to make "express findings of fact and conclusions of law on probably of success on the merits" so he could immediately be transferred to an RRC.  (Mot. for Express Findings at 1–3).  Finally, Barakat filed his Motion for Information where he seeks a recommendation from the undersigned.  (Mot. for Information).

§ 542.18; (Response to Barakat's Motions and Petition, ("Fisher's Resp.") [Doc. No. 9 at 8].

Barakat, therefore, has exhausted his administrative remedies. *See* (Fisher's Resp. at 8); (Groteboer Decl. at 5).

## B.     RRC Placement Determination

### 1.     Applicable Legal and Regulatory Framework

Federal law authorizes the BOP to provide appropriate housing for federal inmates and federal law gives the BOP discretion in satisfying the responsibility. 18 U.S.C. § 3621. The applicable statute provides:

> **(b) Place of imprisonment.**--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> **(1)** the resources of the facility contemplated;
>
> **(2)** the nature and circumstances of the offense;
>
> **(3)** the history and characteristics of the prisoner;
>
> **(4)** any statement by the court that imposed the sentence—
>
> > **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> >
> > **(B)** recommending a type of penal or correctional facility as appropriate; and
>
> **(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each

prisoner the Bureau determines has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.

*Id.*

The SCA must be read in conjunction with the BOP's authority under § 3621 because an RRC is a place of imprisonment. *Robeson v. English*, 12-cv-647 (DSD/JSM), 2012 WL 4872672, *2 n.4 (D. Minn. Oct. 15, 2012) (citing *Miller v. Whitehead*, 527 F.3d 752, 755 n.3 (8th Cir. 2008)). The SCA deals specifically with RRC determinations and provides:

The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility. . . . Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

The Second Chance Act of 2007, Public Law No. 110–199, 122 Stat. 657, effective April 9, 2008, amended 18 U.S.C. § 3624(c). The SCA provided, also, that the BOP Director had to issue regulations to ensure RRC placement determinations are "consistent with section 3621(b) . . .; determined on an individual basis; and of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3621(c)(6).

The BOP issued a Guidance Memorandum on April 14, 2008, where it advised that in conducting RRC assessments the Staff must comply with Program Statement ("PS") 7310.04:[6]

---

[6]     PS 7310.04 is a Program Statement issued by the BOP in 1998 dealing with when the BOP will place an inmate in an RRC. U.S. Dep't of Justice, Federal Bureau of Prisons, Program Statement 7310.04 (1998) *available at* http://www.bop.gov/policy/progstat/7310_004.pdf. "[I]t is well-established that this policy [PS 7310.04] does not contravene 18 U.S.C. § 3621(b)." *Mickelson v. Holinka*, CIV.06-4261(JNE/SRN), 2007 WL 2262877, *2 (D. Minn. Aug. 3, 2007) (citations omitted).

[S]taff must not view any criteria listed in PS 7310.04 . . . or any other policy, as automatically precluding an inmate's pre-release RRC placement. Rather, in accordance with the Act, each individual inmate's pre-release RRC decision must be analyzed and supported under the five-factor criteria.

[S]taff must approach every individual inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release RRC placement.

While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

*Hewitt v. Jett*, 09-cv-1676 (RHK/RLE), 2010 WL 1417654 (D. Minn. Mar. 15, 2010) *report and recommendation adopted*, 09-cv-1676 (RHK/RLE), 2010 WL 1416890 (D. Minn. Apr. 6, 2010).

Then the BOP adopted interim regulations on October 21, 2008, providing:

a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.
b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

28 C.F.R. § 570.21.

Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

28 C.F.R. § 570.22.

The BOP issued another memorandum on November 14, 2008, which reiterated that the earlier April 14, 2008 Memorandum remained effective. *Hewitt*, 2010 WL 1417654, at *3.

### 2.    No Right to Twelve-Month RRC Placement

Barakat requests "a decision from this court in his favor to set aside the Bureau's decision, . . . and [to] release [him] to an RRC placement by June 13th, 2013, or as soon as is possible."  (Pet. at 15).  To the extent Barakat argues he is entitled to twelve months of RRC placement, his argument fails.  *See, e.g.*, *Stanko v. Rios*, CIV. 08-4991(JNE/JJG), 2009 WL 1303969, *3 (D. Minn. May 8, 2009) *aff'd*, 366 F. App'x 725 (8th Cir. 2010) ("Stanko has no affirmative right to placement in a halfway house, or the twelve months' placement that he demands in his petition.");  *Rounds v. Nicklin*, CIV. 13-440 (MJD/AJB), 2013 WL 3088628, *3 (D. Minn. June 18, 2013).  The SCA affords the BOP discretion in determining whether an inmate should be placed in an RRC and, if so, for how long, up to the twelve-month maximum. *See id.*; *Heppner v. Roal*, CIV 09-2926 (PAM/JJK), 2010 WL 1380141, *1 (D. Minn. Mar. 31, 2010).  The SCA does not mandate the BOP grant any time in an RRC, however, it does require the BOP to exercise its discretion only after providing each inmate with an individualized analysis.  *See* 28 U.S.C. § 3624(c)(6)(B); *Rounds*, 2013 WL 3088628 at *3.

### 3.    BOP Conducted an Adequate Review in Barakat's Case that was Proper under the SCA

The crux of all of Barakat's arguments is that the BOP did not make a proper RRC determination under the SCA in his case because the analysis it conducted relied on an improper interpretation of applicable law.  Based on that general assertion, Barakat advances several arguments as to why the BOP's determination in his case was incorrect.  As an initial matter, the Court finds the BOP's RRC placement determination was proper.

In arguing the BOP made an improper determination, Barakat mainly argues the BOP should not have considered PS 7310.04, which allowed for the consideration of his economic background.  (Pet. at 17).  He argues that when PS 7310.04 is considered with § 3621(2), the

BOP is considering factors Congress did not intend and actually considered to be prohibited from consideration. (*Id.*). Barakat contends the BOP failed to provide him any valid rationale for denying his twelve-month RRC placement request because an incorrect interpretation of § 3621(b) is not a valid rationale. (Barakat's Reply in Response to Fisher, ("Barakat's Reply") [Doc. No. 12 at 4–9]. Barakat contends that the BOP's determination exceeded its statutory authority by ignoring § 3621(b) and including consideration of his economic characteristics through PS 7310.04. (Barakat's Reply at 5).

The SCA entitles an inmate to an RRC assessment "that is conducted in a manner that is consistent with the SCA." *Rounds*, 2013 WL 3088628, at *3 (emphasis omitted). In making its RRC determination, "the BOP must simply consider a prisoner's request for a halfway house transfer 'in good faith' and in accordance with the factors in 18 U.S.C. § 3621(b)." *Raymer v. Cruz*, 08-cv-6382 (MJD/JJG), 2009 WL 2778073, *1 (D. Minn. Aug. 28, 2009) (citing *Miller v. Whitehead*, 527 F.3d 752, 758 (8th Cir.2008)); *Rounds*, 2013 WL 3088628, at *3.

The five factors for consideration include:

> (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the United States Sentencing Commission.

28 U.S.C. § 3621(b); *Rounds*, 2013 WL 3088628, at *2. Because of the BOP's broad discretion in designating inmates to correctional facilities, a court reviewing an RRC placement determination is limited to considering whether the BOP abused its discretion in reaching its determination. *Bania v. Roal*, 11-cv-925 (SRN/TNL), 2011 WL 7945547, at *3–4 (D. Minn. Oct. 24, 2011) (citing *Fegans v. United States*, 506 F.3d 1101, 1103–05 (8th Cir. 2007)). A brief response from the warden to an RRC request suffices because the BOP is not required to provide

an inmate with a detailed statutory analysis. *Eickleberry v. Jett*, 11-cv-443 (DSD/JSM), 2011 WL 6754075, at *10 (D. Minn. Dec. 7, 2011) *report and recommendation adopted*, 11-cv-443 (DSD/JSM), 2011 WL 6755184 (D. Minn. Dec. 23, 2011).

Barakat's Unit Team conducted a review of Barakat's pre-release placement pursuant to the five factors listed in section 3621(b) on December 27, 2012. *See* (Groteboer Decl. ¶¶ 6–7); (Review for Residential Reentry Center, "Review for Reentry," Attach. C, Attached to Groteboer Decl.) [Doc. No. 10-1 at 11–18]. The review contemplated the nature of Barakat's charges, including the violent nature of the charge, the recommendations of the sentencing judge that he be involved in drug abuse, mental health, and financial responsibility programs, and the fact that Barakat received a sentence at the low end of the applicable sentencing guidelines. (Groteboer Decl. ¶ 8). The review included consideration that Barakat earned his General Equivalency Diploma ("GED"), completed the Drug Education and Non-residential Drug Abuse Program, completed three Vocational Programs and was enrolled in another, had a clear disciplinary record, and had family support. (*Id.* ¶ 9). Also, Barakat had a $1,500 in deposits made in the last six months from outside sources. (*Id.*). It was after consideration of the applicable factors that the Unit Team recommended a 180-day RRC placement for Barakat as sufficient to afford the greatest likelihood of a successful reintegration. (*Id.* ¶ 10). There is no evidence that one factor was given disproportionate weight or that certain factors were not considered.[7] *See Rounds*, 2013 WL 3088628, at *3 (citing *Miller*, 527 F.3d 752). Because the Unit Team properly

---

[7] Barakat contends in his Affidavit in Response to the Groteboer Declaration that "[i]t was made apparent in every way that [his] personal financial characteristics were a preoccupation and sole determining factor in [his] being analyzed for RRC placement, and the only verbal reason given for [his] non-qualification for the full twelve months RRC placement time." (Aff. of Victor Ali Barakat in Supp. of Mot. for Express Findings) [Doc. No. 14 at 1]. Despite Barakat's contention, the evidence shows the BOP conducted an individualized review based on multiple factors consistent with the SCA. *See* (Groteboer Decl. at ¶¶ 6–7); (Review for Reentry).

conducted an individualized review, its RRC determination was proper. *See Rounds*, 2013 WL 3088628, at \*3 (dismissing petition for habeas corpus challenging RRC determination when a proper individualized review was conducted and petitioner failed to show a lack of good faith); *Hewitt*, 2010 WL 1417654, at \*6 (refusing to disrupt BOP's RRC determination when a proper individualized review was conducted under the SCA).

### 4. The BOP's Consideration of Barakat's Economic Background Does Not Violate the SCA

Barakat's contention that the BOP should not have considered additional factors including his financial resources also fails. (Pet. at 17–20).[8] The Eighth Circuit has advised that even when a factor considered in making an RRC determination is not tied to a § 3621 statutory factor directly, "we do not read § 3621(b) to preclude the consideration of factors beyond those set forth in the statute." *Miller*, 527 F.3d at 757–58 (citing *Levine v. Apker,* 455 F.3d 71, 86 (2d Cir. 2006)). Moreover, Barakat's argument concerning PS 7301.04's inapplicability to RRC determinations fails because, "it is well-established that this policy [Program Statement 7310.04] does not contravene 18 U.S.C. § 3621(b)." *Mickelson v. Holinka*, CIV.06-4261 (JNE/SRN), 2007 WL 2262877, at \*2 (D. Minn. Aug. 3, 2007) (citing *Griffin v. Morrison,* Civ. No. 06-3071

---

[8]    Barakat points to section 3621(b)'s exclusion of determinations made of favoritism and the fact that "the BOP may not make its determinations based on prisoners' economic backgrounds" to argue his financial situation cannot be considered. The authority Barakat cites prevents making an RRC determination that is discriminatorily based on economic background; however, it does not, as he contends, prevent the BOP from considering an inmate's economic situation in its five-factor analysis to determine how long of an RRC placement is needed to best prepare the inmate for reincorporation into society. *See Levine v. Apker*, 455 F.3d 71, 81 (2d Cir. 2006); § 3621(b); (Pet. at 17–20).

Barakat also refers to consideration of an inmate's personal economic characteristics in an RRC determination as an "ex-post-facto violation which impermissibly edits . . . 18 U.S.C. 3621(b)." (Barakat's Amended Reply at 14). Because the Court finds the BOP's consideration of an inmate's economic characteristics does not violate the SCA, it does not address Barakat's ex post facto argument.

(JNE/FLN), 2007 WL 474960, at *2 (D. Minn. Feb. 8, 2007); *Mesner v. Morrison,* Civ. No. 06-2118 (ADM/SRN), 2006 WL 3080914, at *2 (D. Minn. Oct. 27, 2006)); *see also Morrow v. Rios*, CIV. 08-320(JRT/RLE), 2009 WL 924525, at *2 (D. Minn. Mar. 31, 2009) (describing Program Statement 7310.04 as outlining "various factors the BOP considers in assessing individual requests for RRC placement[,]" and applying the PS 7310.04 factor of history of escape to an RRC determination). An RRC placement decision that considered an inmate's "individual circumstances, including . . . *financial support*, that would aid him in his reentry" was a proper individual review under the SCA. *Tovey v. Cruz*, 09-cv-508 (PAM/RLE), 2010 WL 391336, at *2–3, *12 (D. Minn. Jan. 25, 2010) (emphasis added); *see also Loving v. Jett*, 09-cv-1403 (PAM/AJB), 2009 WL 2960710, at *1–2 (D. Minn. Sept. 10, 2009) (upholding an RRC determination that considered, among other factors, the applying inmate's financial resources); *Rounds*, 2013 WL 3088628, at *2 (upholding an RRC determination that considered the applicants "lack of consistent financial support from her family" in making the recommendation); *McCarthy v. Fed. Bureau of Prisons*, 10-cv-745 (PJS/SRN), 2010 WL 4320507, *3 (D. Minn. Sept. 29, 2010) *report and recommendation adopted*, 10-cv-745 (PJS/SRN), 2010 WL 4312851 (D. Minn. Oct. 22, 2010) (upholding an RRC review that considered inmate's family support and financial resources in making the RRC determination). Consideration of financial resources does not, as Barakat contends, render the BOP's RRC determination in his case contrary to the SCA.

When the "record reflects individualized consideration of . . . [RRC] requests, and no evidence that prison officials acted other than in good faith—this Court has no legal basis to intervene." *Morrow*, 2009 WL 924525, *2. Because the record here establishes Barakat

received an individualized review in compliance with § 3621, the Court finds it has no authority or basis for displacing the BOP's determination.

### C. Administrative Procedure Act Claims

Barakat challenges FCI Sandstone's denial of his twelve-month RRC request and FCI Sandstone's practices generally under the APA.

As to FCI Sandstone's practices generally, Barakat contends FCI Sandstone's practice of "denying a Federal inmate[']s Second Chance Act requests for RRC placement time, with only generalized statements, no references to facts found [or] conclusions made and reference to Program statements outside the contemplation of the Act itself . . ." collectively prevents inmates from receiving a meaningful appeal in violation of 5 U.S.C. § 706's (the "Administrative Procedure Act" or the "APA") obligations on agencies exercising its allotted discretion. (Pet. at 11). Instead, Barakat claims the BOP should provide inmates with adequate explanations when denying RRC placement requests in order to allow for a meaningful review and to show that the SCA's requirement for a "fair and individualized approach" is satisfied. (Pet. at 13). Barakat seeks an order from the Court directing FCI Sandstone to change its practice regarding RRC requests under the SCA in similar circumstances and immediate RRC placement for himself. (Pet. at 15).

As to himself, Barakat argues the BOP's failure to satisfy the procedural requirements of the APA in its denial of his request for twelve months of RRC placement rendered the denial "arbitrary and capricious under 5 U.S.C. § 706." (Pet. at 14). Thus, Barakat asks the Court to set aside the BOP's denial of his request for twelve months of RRC placement under 5 U.S.C. § 706. (*Id.*).

### 1. Barakat's APA Claims Concerning his RRC Determination Fail for a Lack of Subject Matter Jurisdiction

Title 5 U.S.C. § 706 of the APA provides a cause of action for individuals experiencing a legal harm because of agency action and offers a means for holding agency actions unlawful when they are arbitrary, capricious, or an abuse of discretion. *Han v. Benov*, 10-cv-1276, 2011 WL 4084185, at *4 (E.D. Cal. Sept. 13, 2011) (citing 5 U.S.C. §§ 702, 706(2)(A); *Rebb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011)). Specifically, the APA provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]

Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (2006).

This provision of the APA is limited under the SCA, which provides "[t]he provisions of sections . . . 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625. In considering the applicability of § 3625 to a discretionary decision of the BOP under § 3621, the Ninth Circuit explained, "[t]o find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625." *Reeb*, 636 F.3d at 1227. The Ninth Circuit thus found the BOP's discretionary decision, was "not subject to judicial review." *Id.* (considering the BOP's discretionary decision of admission to a particular Residential Drug Abuse Program ("RDAP") under § 3621(e)).

The Ninth Circuit's decision has been applied to other discretionary decisions by the BOP under other subsections of § 3621, including the BOP's discretionary decision to make RRC placement determinations under § 3621(b). *See, e.g.*, *Han*, 2011 WL 4084185, at *5

("[T]he BOP's substantive, discretionary RRC decision adverse to Petitioner is not reviewable in the district court pursuant to § 706(2)(A) of the APA.") (considering Petitioner's argument that the BOP's denial of his RRC transfer request was arbitrary and capricious under the APA); *Sanders v. Ledezma*, 11-cv-391, 2011 WL 4476742, at *2 n.14 (W.D. Okla. Sept. 7, 2011). (stating § 706(2)(A) of the APA does not apply to BOP determinations of RRC placement under the SCA); *English v. Ives*, 11-cv-0010, 2012 WL 4038495, at *5 (E.D. Cal. Sept. 12, 2012) ("To the extent petitioner is arguing that the BOP's denial of RRC placement is arbitrary and capricious under 5 U.S.C. § 706(a)(A) of the Administrative Procedure Act, this court lacks jurisdiction over his claim.").

Courts in this District have found § 3625 precludes judicial review of BOP discretionary decisions under § 3621. *See Davis v. English*, 12-cv-1483 (JNE/LIB), 2013 WL 1149526, at *6– 7 (D. Minn. Feb. 27, 2013) *report and recommendation adopted*, CIV. 12-1483 (JNE/LIB), 2013 WL 1149769 (D. Minn. Mar. 19, 2013) (finding § 3625 barred judicial review of petitioner's claim that BOP's decision to exclude him from participation in the RDAP, a decision made under § 3621, was arbitrary and capricious under § 706 of the APA) (citing *Rebb*, 636 F. 3d at 1227); *Rios v. Fisher*, 10-cv04020 (PJS/TNL), 2012 WL 2814338, *2–3 (D. Minn. June 19, 2012) *report and recommendation adopted*, 10-cv-4020 (PJS/TNL), 2012 WL 2814325 (D. Minn. July 10, 2012) (citing *Reeb*, 636 F. 3d at 1227; *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011) (holding the court lacked subject matter jurisdiction to decide petitioner's claim that the BOP violated the APA in making its decision regarding RDAP)). Because Barakat seeks review, under § 706 of the APA, of a discretionary BOP determination made pursuant to § 3621(b), the Court finds that it lacks subject matter jurisdiction to decide the issue because of 18 U.S.C. § 3625.

### 2.    Barakat's Substantive Due Process Claim Fails

Even if the Court could hear Barakat's APA claim, to the extent Barakat makes a substantive due process claim, that claim fails. An inmate's challenge of the BOP's RRC placement determination in his or her case as arbitrary and capricious in violation of the APA suggests that the claim alleged a denial of substantive due process. *See Sanders*, 2011 WL 4476742, at *2 (citation omitted). A substantive due process challenge requires a protected liberty interest. *Id.* (footnote omitted). Barakat alleges that he has a protected liberty interest to be analyzed for RRC placement based solely on the § 3621 factors without regard to PS 7310.04 and his economic background. *See* (Pet. at 16–18). The BOP's determination of when to move an inmate to an RRC under the SCA, however, does not implicate a protected liberty interest. *Sanders*, 2011 WL 4476742, at *2 (citation omitted); *Aldaco v. Holder*, 10-CV-590 (JRT/LIB), 2011 WL 825624, *7 (D. Minn. Jan. 7, 2011) *report and recommendation adopted*, CIV. 10-590 JRT/LIB, 2011 WL 839388 (D. Minn. Mar. 7, 2011) *reconsideration denied*, 10-CV-590 (JRT/LIB), 2011 WL 1596226 (D. Minn. Apr. 27, 2011) (stating that "when a statute grants the BOP a great deal of discretion, the Congress has not conferred a liberty right on an inmate. . . . Rather, a protected liberty interest exists *only* when a regulation uses "explicitly mandatory language" instructing the decision-maker to reach a specific result if certain criteria are met.") (explaining the SCA does not create a protected liberty interest) (emphasis in original). Because Barakat does not establish the presence of a protected liberty interest, to the extent he makes substantive due process claims in relation to his APA argument, these claims fail.

### 3.    The BOP Had a Reasonable Basis for Making its RRC Determination in Barakat's Case

Even if the Court could hear Barakat's APA claim, his claim would still fail under the applicable standard of review. "Under the arbitrary and capricious standard, [the court's]

review . . . is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Sacora*, 628 F.3d at 1068 (citing *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir. 2009)); *Missouri Limestone Producers Ass'n, Inc. v. Browner*, 165 F.3d 619, 621 (8th Cir. 1999) (citations omitted). As discussed above, Barakat's request for a twelve-month RRC placement was given a proper, good faith analysis under the SCA. The necessary reasonable basis for the BOP's determination, therefore, was satisfied and Barakat's claim fails.

### 4. Barakat's APA Claims Concerning FCI Sandstone's Practices Generally Fail

Barakat also makes conclusory allegations that FCI Sandstone violated the APA as to similarly situated prisoners by employing a conclusory and mechanical application of the five factor analysis. (Pet. at 11–16). Barakat, however, cannot even establish that he was given an improper review. The Court finds Barakat received a proper review. Barakat's claim that FCI Sandstone's general practices require a court order directing FCI Sandstone to change its practices, therefore, fails as there is no evidence before the Court supporting his claim.

### D. No Evidentiary Hearing is Required

The Court can resolve all of the claims in Barakat's Petition and his additional motions by relying on the record. An evidentiary hearing, therefore, is not necessary. *See Urquhart v. Lockhart,* 726 F.2d 1316, 1318–19 (8th Cir. 1984) (citing *Wallace v. Lockhart,* 701 F.2d 719, 730 (8th Cir. 1983)) ("A federal court may dismiss a claim without an evidentiary hearing where the allegations are frivolous, where the allegations fail to state a constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record.").

### E. Barakat's Motions for Expedition and Express Findings

Barakat filed, in addition to his Petition for habeas relief, a motion for a preliminary injunction and to expedite hearing, a motion for express findings of fact and conclusions of law, a motion to promptly conduct proceedings, and a motion for information and recommendation by the undersigned. (Mot. for Preliminary Injunction and Expedition); (Mot. for Express Findings); (Mot. to Promptly Conduct Proceedings); and (Mot. for Information). Because the Court recommends the Petition be dismissed, Barakat's other motions are moot. *See O'Hara v. Rios*, 08-cv-5160 (JRT/JJK), 2009 WL 3164724, at *9 (D. Minn. Sept. 28, 2009) (dismissing as moot habeas corpus petitioner's motions for immediate consideration and expedition as moot after recommendation that petitioner's habeas claims be denied and dismissed with prejudice).

### F.       Barakat's Motion to Seal

Barakat requests a "permanent or temporary order to keep documents in this matter sealed until final adjudication and/or until [the] time Petitioner can respond to a statement of deficiencies from this Honorable Court concerning this request."  (Mot. to Seal at 1).  Barakat seeks sealing of the documents in this matter based on concerns that other inmates at FCI Sandstone have accessed his legal mail and, therefore, have seen the "personal medical nature, including specific mental health history information" contained in the filings.  (*Id.* at 2).  Barakat also cites concerns that other inmates will essentially copy his filings for use in their own cases. (*Id.* at 2–3).[9]

Because the Court recommends Barakat's Petition be dismissed, it also recommends Barakat's Motion to Seal be denied as moot.  *See Danforth v. Crist*, 01-CV-2137 (JRT/RLE), 2004 WL 1630830, *1–2 (D. Minn. July 14, 2004) *aff'd*, 624 F.3d 915 (8th Cir. 2010) (adopting magistrate judge's report and recommendation recommending the habeas petition at issue be

---

[9]       Fisher declined to respond to Barakat's Motion to Seal and his Motion to Expedite, leaving decision on these motions to the Court.  (Fisher's Resp. at 1–2).

denied over petitioner's objections and finding petitioner's motion to file his discovery motion under seal as moot based on the denial of the Petition).

### G. Barakat's Motion for a Preliminary Injunction

Barakat seeks a preliminary injunction from the Court ordering "his immediate transfer to an RRC placement, the relief requested in the initial complaint, and sought because of violations to Petitioner[']s statutory rights." (Mot. for Preliminary Injunction at 1).[10] In determining whether a motion for a preliminary injunction should be granted, four factors must be considered including: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *See, e.g.*, *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). "While no single factor is determinative, the probability of success factor is the most significant[.]" *Id.* (citation and quotations omitted).

Because the Court recommends Barakat's Petition, which serves as the foundation for any injunctive relief, be dismissed, Barakat has no probably of succeeding on the merits. *See Nancy Ann Olson v. State*, 95-CV-288, 1995 WL 861007, at *4–5 (D. Minn. Dec. 19, 1995). Barakat is not entitled, therefore, to a preliminary injunction.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

---

[10] Barakat also submitted an affidavit with his Motion for Preliminary Injunction where he alleges that the staff at FCI Sandstone "have exhibited a deliberate indifference to my Administrative Grievance that is in this case time sensitive, with undue delayment of the procedure[.]" (Decl. of Barakat in Support of Motion to for Preliminary Injunction and to Expedite Hearing) [Doc. No. 4 at 1–2].

1. Barakat's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Doc. No. 1] be **DISMISSED**;

2. Barakat's Motion for Preliminary Injunction and to Expedite Hearing [Doc. No. 3] be **DENIED AS MOOT**;

3. Barakat's Motion to Seal Pleadings [Doc. No. 5] be **DENIED AS MOOT**;

4. Barakat's Motion for Express Findings of Fact and Conclusions of Law [Doc. No. 8] be **DENIED AS MOOT**;

5. Barakat's Motion to Promptly Conduct Proceedings [Doc. No. 22] be **DENIED AS MOOT**;

6. Barakat's Motion for Information and Request of Recommendation of Magistrate Judge [Doc. No. 25] be **DENIED AS MOOT**; and

7. This action be **DISMISSED with prejudice**.

Dated: Oct. 8, 2013


_s/ Steven E. Rau_____
Steven E. Rau
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by October 22, 2013, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.